ROCKER SPRING Co. *v.* FLINN, (six cases.)

(*Circuit Court, N. D. Ohio, E. D.* 1891.)

**1. PATENTS FOR INVENTIONS—ANTICIPATION.**

Letters patent No. 354,043, issued to Connolly December 7, 1886, No. 247,472, issued to Beiersdorf & Bunker September 27, 1881, No. 313,429, issued to Kenna March 3, 1885, No. 334,102, issued to Bunker January 12, 1886, No. 334,345, issued to Bunker January 12, 1886, and No. 273,630, issued to Stevens March 6, 1883, the principal feature of each of which is the use of spiral or coil springs to connect the base and rocking part of a platform rocking-chair, located at opposite sides of the chair center, and in the center of the oscillation of the chair-seat, and rigidly connected to said parts, are not anticipated by springs manufactured under letters patent to John Flinn, 339,-754, issued April 5, 1881, or No. 345,673, issued July 20, 1886, which were attached only at one place on the base rail and rocker of the chair, and were not rigid and firm. but were long and weak, and would not hold the upper and lower rocker to an alignment, and to the use of which guides and stops and other appliances were necessary. These objections and noises, sudden jerks, a wobbling motion, and the sense of insecurity caused thereby, combined to make the use of the springs limited, and they cannot be regarded as anticipating the Connolly invention, which was generally accepted and used.

**2. SAME.**

The use of such coil or spiral springs is not anticipated by the use for a similar purpose of steel springs made of flat sheet steel of various thicknesses and strength, attached to the base and rocker so as to receive a tortional spring action, and operate with a twist against itself, giving the chair a jerky, twisting movement, unpleasant to the occupant.

In Equity. Bills for infringement of letters patent.

*Banning, Banning & Payson,* (*M. D. & L. L. Leggett,* of counsel,) for complainant.

*Henry C. Ranney* and *Henry McKinney,* for defendant.

RICKS, J. The complainant has filed six bills in equity under six different letters patent owned by it, and of which the defendant is charged with infringement. The complainant asks for a decree for perpetual injunction, but waives any accounting as to profit and damages. The several patents sued upon, and the different claims which it is charged the defendant infringes, are as follows:

First, the Connolly patent of December 7, 1886. This patent is numbered 354,043, and was originally applied for on July 30, 1880. A provisional application was made on March 23, 1885, which entitles it on the record to date back to the date or time of the original filing. There are two claims in this patent, as follows:

"(1) The combination in a chair of a seat having rockers secured to its under side, a base having a lower support for said rockers, and two spiral springs rigidly connected to said parts, respectively, and located and secured at opposite sides of the chair center, and constituting the connection between the seat and base parts of the chair, for holding the rockers and their lower support in alignment and proper relative position, substantially as described.

"(2) The combination in a chair of a seat having rockers secured to its under side, a base having a lower support for said rockers, and two spiral springs rigidly connected to said parts, respectively, and located and described at opposite sides of the chair center, and in the center of oscillation of the chair-seat, and constituting the connection between the seat and base parts of the chair for holding the rockers and their lower support in alignment and proper relative position, substantially as described."

The defendant is charged with infringing both these claims.

The patent sued upon in the other case is the Biersdorf & Bunker patent, of September 27, 1881, numbered 247,472. Application for this patent was filed November 15, 1880, but after application of Connolly. It has only one claim, to-wit:

"In a platform rocking-chair, the combination, with the base rail, A, A, prime, and rockers, B, B, prime, resting upon such base rails, of the broad and stiff spiral spring, C, C, prime, connected rigidly with such base rails and rockers, and being both deflected and extended when the chair is rocked, such springs being oppositely coiled, and controlling wholly the movement and position of the rockers and of the base rails, substantially as described and shown."

The next patent sued on is the Kenna patent, of March 3, 1885, numbered 313,429. This patent contains five claims, but infringement is only charged of the first, second, and third. Without quoting these three claims in full, I refer to the brief synopsis thereof of complainant's counsel in their brief, in which they describe the claims to be that "the spring called for has end portions of the wire extended beyond the side of the spring, and connectors for securing the extended end portions directly to the respective parts of the chair." In the third claim the connectors are called "bracket plates," while in the first and second claims the broader term "connectors" is used. Of course, the greater includes the lesser; the bracket plates are connectors. These connectors hold the respective ends of the spring at several points, so that they are rigidly and securely attached to the rocker and base rails of the chair.

The next patent is the Bunker patent of January 12, 1886, numbered 334,102. This patent contains four claims, but infringement is only charged of the first and fourth, which are as follows:

"(1) A bracket for platform rocking-chair attachments, comprising two parts, one attached to a coil spring, and the other to the appropriate portions of the chair; the two when in operation being secured or fastened together by one interlocking with or into the other at the side of the spring, substantially as described."

"(4) A bracket for platform rocking-chair attachments comprising two parts, one to be rigidly attached to the chair, and the other rigidly to the coil spring, the two to be rigidly connected together by one interlocking with or into the other, and to be held in their proper relative positions when in use by the drawing tension of the spring, whereby, by means of the rigid attachments of their ends, the springs are flexed or bent by the rocking of the chair, substantially as described."

The next patent sued upon is the Bunker patent of January 12, 1886, numbered 334,345. Infringement of both claims is charged. These claims are as follows:

"(1) A bracket for platform rocking-chair attachments, having side and middle projections for securing one end of the spring, and at least one of said projections having a shoulder, and being adapted to be inserted between the coils of the spring, said shoulder being on the inside of the end coil when the spring is in place, whereby the spring is held in place, and prevented from being drawn away from the rockers and base rails of the chair, substantially as described.

"(2) A bracket for platform rocking-chair attachments, having side projections to partially embrace or encircle the sides of the end coil of the spring to a middle projection, the middle projection having a shoulder, and being adapted to be inserted between the end coils of the spring, said shoulder being on the inside of the end coil when the spring is in place, whereby the spring is held in place and rigidly attached to the upper and lower parts of the chair, respectively, substantially as described."

The next patent is the Stevens patent of March 6, 1883, numbered 273,630. This patent has six claims, but infringement is only charged of the sixth, which is as follows:

"(6) The combination, substantially as shown and described, with the base and rocking portions of a base rocking-chair, with flexible stops connecting the two, and arranged in the rear of a vertical line of rest or center of motion of the rocking-chair, and in front of the point where gravity would overturn the chair backward, positively limiting the backward and forward movements of the rocking portion, and preventing the overturning thereof, as specified."

The defendant has answered in each case, and denies that the letters patent sued on are valid, because the patentee named therein is not the inventor, nor the assignee of the inventor; that said invention has been in common use by the public for more than five years prior to the issuing of said letters patent, or the filing of the application therefor; that said invention is not new, novel, or useful; and denies infringement. He further says that the springs sold by him are manufactured and put on the market by virtue of letters patent duly issued to him by the United States under date of April 5, 1881, and numbered 239,754, the application therefor having been filed on the 26th day of April, 1880; and also by virtue of certain other letters patent duly issued and granted to him by the proper officers of said government under date of July 20, 1886, and numbered 345,678, all of which letters the defendant exhibits to the court. The defendant further claims that he is the sole and original inventor of the invention and articles named and described in said letters patent, respectively.

The contention as to priority of the invention between the Connollys and the defendant relate to the spiral spring covered by the claims set forth in complainant's patent numbered 354,043, and the springs exhibited by defendant, especially Exhibits 5 and 11. The complainant's spring was first made and used on a tilting office-chair, in the fall of 1876, in the offices of the Connollys in Philadelphia, Pa. A tracing drawing of this chair with the spring attached is exhibited to the deposition of Thomas Connolly, and identified by him and Joseph B. Connolly as a correct representation of the original chair and spring as made by them. They are corroborated in this testimony by the evidence of Clayton W. Nichols, who identifies the drawing as a correct representation of a chair made by the firm with which he was connected, Hutchinson, Nichols & Co., of Philadelphia, for the Connolly Bros. between July and December, 1876. He fixed the time definitely by charges made on their original account-books in the months of August and September, 1876. A copy of these charges, item by item, is given in Mr. Nichols' testimony. He saw the chair in use in Connolly's office

frequently after those dates. The Connolly Bros. continued making experiments and improvements in this spring until about July 30, 1880, when their invention was perfected, and application was made for letters patent numbered 354,043. In their application the applicants state what constitutes their real invention. I quote as follows:

"The essential idea or feature of our invention being the connecting together and holding in proper position of the seat and base parts of a chair having rockers secured to the under side of its seat part, and a base having a lower support therefor, by two spiral springs located at opposite sides of the chair center. We, of course, do not wish to be understood as limiting ourselves to special forms or details of construction, or in any way as waiving the use of proper equivalents."

The defendant contends that this invention was anticipated by various forms of spiral springs in common use before the Connolly invention. He offered in evidence exhibits of nine different forms of such springs, all claimed to have been in prior use. The evidence of such use is confined to the testimony of the defendant and a foreman in his employ in Philadelphia in 1876. The original springs then claimed to have been used are not produced. Springs of similar construction and use are produced, and which it is claimed are duplicates. Proof of use of Exhibits 5 and 11 experimentally is offered, but proof of use of No. 12 is wanting. Even conceding that the springs exhibited performed all the functions claimed for them, the proof of use and application to the purposes claimed for them is not as satisfactory as the law requires. The defendant did not show that activity and earnest purpose to put these springs in use, and to demonstrate to the public their utility, that is common and natural to inventors who feel that they have conceived something new and useful. The most that is claimed by the witnesses is that some of these springs were used and applied on rockers repaired and put in use in a few places in Philadelphia. The times and places, and the persons by whom they were so used, are very indefinite. A few of these springs were kept on hand ready for sale. The evidence shows that some sales were actually made, but there is nothing to show that the defendant had sufficient confidence in these springs to attach them to new rockers, and place them upon the market and push their sale. He did not seem to have confidence in the utility of his invention. There is no evidence that it was accepted or adopted by the public in general use. In fact, the whole testimony in the case shows that during these months the defendant was experimenting with these springs, and endeavoring to perfect an invention. But the invention does not appear to have been completed by the defendant. The springs were not applied and used and put upon the market, claiming for them that they would meet the uses for which they were invented. The objections to the defendant's springs were obvious: They were attached at only one place on the base rail and rocker of the chair, and were not rigid and firm. The springs were long and weak. The wire was not stiff enough, and the springs were not sufficiently well attached to hold the upper and lower rockers to an alignment. Guides and stops and other objectionable appliances were

necessary to make the use of these springs even possible. Noises, sudden jerks, a wobbling motion to the chair, a weakness and want of sense of security and safety on the part of the occupant all combined to make the use of this spring very limited. In truth, the springs as used were not capable of accomplishing all the useful results claimed in the patent, and cannot, therefore, be claimed as having anticipated the Connolly invention. On the other hand, the Connolly invention seems to have been generally accepted and used. Its utility was shown by such general use and adoption. Platform chairs soon became popular. The testimony of a large number of manufacturers of furniture, offered by the complainant, shows clearly the objections to the old springs, and the general acceptance by the public, and the advantages recognized in, the new springs. The *prima facie* case of invention made by the letters patent has thus been strengthened and broadened by the testimony of complainant's expert witnesses and the manufacturers, who testified as to the practical results following the use of the springs as claimed in the patent. This general acceptance by those best qualified to judge of the utility of the invention strengthens the claim that a patentable invention is covered by the letters sued on, and, where there is doubt whether the invention really exists as claimed, this fact ought to turn the scale.

The defense is based, not only on the anticipatory character of the springs used and made by defendant of the various kinds exhibited, and which defense, for the various reasons above given, was held to be established, but it is next claimed that defendant manufactured his springs by virtue of letters patent numbered 239,754, and numbered 345,678. Exhibits 6, 7, and 8 are offered as springs covered by patent numbered 239,754. These are steel springs, made of flat sheet steel of various thicknesses and strength. They are attached to the rockers and base, and given a torsional spring action. This spring operates on a twist against itself. While the spiral spring operates on a straight line, tilt, or draw, the action of the flat spring is a constant strain on the metal in use. The spiral spring has a regular yield. The two springs belong to different classes. But the flat spring has not been successful. It gave a jerky, twisting movement to the chair, not pleasant to the occupant. The strain on the metal caused by the constant motion of the chair soon made the spring brittle, and it was liable to snap and break.

I do not think these springs contain the invention shown in the Connolly patent numbered 354,043. The spring covered by patent numbered 345,678 is in many respects like the other exhibits filed by the defendant, and without the features added since the date of complainant's invention may fairly be held to come within the reasons hereinbefore given for finding that it is not rigidly attached at more than one point, and does not perform the same functions as the spring covered by the invention under No. 354,043. I am therefore of the opinion that complainant is entitled to a decree sustaining the validity of its patent in each of the six cases hereinbefore cited, and finding that there is an infringement of the first and second claims of patent numbered 354,-043, of the single claim of patent numbered 247,472, of the first, sec-

ond, and third claims of patent numbered 313,429, of the first and fourth claims of patent numbered 334,102, of the first and second claims of patent numbered 334,345, and of the sixth claim of patent numbered 273,630; and, complainant having waived a decree for profits and damages, a perpetual injunction may issue against the defendant, restraining him as prayed in the several bills.