ROCKER SPRING CO. v. THOMAS.

(Circuit Court, N. D. Ohio, E. D.   May 31, 1895.)

No. 5,187.

1. PATENTS—ANTICIPATION.
     Patent No. 354,043, issued to Connolly, December 7, 1886, for "spring attachment for rocking chairs," the principal feature of which is the use of spiral or coil springs to connect the base and rocking part of a platform rocking chair, located at opposite sides of the chair center, and in the center of the oscillation of the chair seat, and rigidly connected to such parts, was not anticipated by patent No. 185,501, issued to the same, December 19, 1876, for an improvement in tilting chairs, described as intended to provide a chair furnished with a spring which will afford an elastic or yielding support for the seat, and which will at the same time permit such seat to be tilted or rocked according to the inclination of the occupier's body and limbs, and the essence of which consists in the application or employment of a spiral spring in such a manner as will afford a support to the seat, being compressed fully or in part when such seat

is occupied, and opening and expanding on one side whenever the latter is tilted or rocked, etc.

2. SAME—INFRINGEMENT.

Patent No. 354,043, issued to Connolly, December 7, 1886, for "spring attachment for rocking chairs," the principal feature of which is the use of spiral or coil springs to connect the base and rocking part of a platform rocking chair, located at opposite sides of the chair center, and in the center of the oscillation of the chair seat, and rigidly connected to such parts, but under the claims for which the springs could be applied to any part of the chair where their function could be properly used, is infringed by a platform rocking chair with springs applied directly to the rocker and to the base.

In Equity.

Banning & Banning and M. D. Leggett, for complainant.

M. G. Norton, for defendant.

RICKS, District Judge. This is a bill filed by the complainant to establish the validity of letters patent No. 354,043, which was entitled a patent "for spring attachment for rocking chairs," dated December 7, 1886. The original application for said patent was filed on the 30th day of July, 1880. The complainant avers that the defendant is infringing this patent, and asks for an injunction and an account of profits and damages. The complainant claims title to this patent by assignment from M. Daniel Connolly and Thomas A. Connolly. The same inventors were granted an original patent, No. 185,501, dated December 19, 1876, application for which was filed February 19, 1876. Said original patent covered an improvement in tilting chairs. That invention was described as follows:

"The aim and intent of the improvements herein described are to provide a chair furnished with a spring which will afford an elastic or yielding support for the seat, and which will at the same time permit said seat to be tilted or rocked according to the inclination of the occupier's body and limbs. The essence of the invention consists in the application or employment of a spiral spring in such a manner as will afford a support to the seat, being compressed wholly or in part when said seat is occupied, and opening or expanding on one side whenever the latter is tilted or rocked. * * * The spring thus located forms a yielding or elastic support for the seat, and also permits the rocking of same in any direction from side to side, as well as front and back, facilitating by its tendency to contract or coil the return of said seat to a horizontal or approximately horizontal line after being tilted."

This patent related solely to tilting chairs. In its specifications and claims it is very clear that the spring described was fastened at the center pivot, and was intended to give the chair a tilt. It was soon discovered that this tilt was accompanied by a lateral motion neither comfortable nor safe. Stops and side supports were supplied to remedy this evil. On July 30, 1880, application was filed by the same inventors for letters patent for a spring attachment to rocking chairs, which is the patent now sued upon and in controversy.

The main defense which I deem it necessary to consider in view of the conclusion reached is that this patent was invalid for the reasons:

"(1) That it contains nothing new, and does not describe an invention as shown by the state of the art. (2) That the evidence of the defendant's ex-

pert conclusively shows that said patent contains nothing new, and does not describe an invention, and is not intended for, nor is it applicable to, a platform rocking chair, but is restricted by the claims, specifications, and drawings to a tilting chair. (3) That if an invention is described by the patent in suit, it is but an improvement on patent No. 185,501 by the addition of stops and side supports, or the so-called 'rockers,' E and F, and an extra spring for the purpose of preventing lateral movement resulting from the use of the single spring described in said patent, and is only applicable to a tilting chair constructed specifically in accordance with said patent No. 185,501; and that this is shown both by the file wrapper and the evidence of one of the patentees, Thomas A. Connolly, taken in this case."

It appears from the patent No. 354,043 that, though the original application was filed on July 30, 1880, the patent was not granted until December 7, 1886. This long period of delay in the patent office was occupied quite diligently by the patentees in what seems to me, after a full reading of the file wrapper and contents, to have been an effort to extend the original Connolly patent of 1875 to apply to rocking chairs. After a great many withdrawals, claims, disallowances by the examiner, and amendments by the patentees, the specifications and claims were quite different from those originally set forth. During all this correspondence and proceeding the effort of the patentees was clearly to extend the patent aforesaid so as to embrace rocking chairs. Did they succeed in accomplishing this? In the letters patent in suit the inventors said:

"The object of our invention is to provide a chair consisting of a seat having rockers secured to its under side and a base having a lower support for said rockers, with two connecting springs, which shall be of sufficient strength and tension to securely connect the base and seat parts together and hold the rockers in form alignment with their lower support, so as to prevent the said rockers from slipping forward and backward or sidewise thereon. The two connecting springs are to be placed and secured in or near the center of oscillation, and at off-center points,—that is, at the sides of the chair center, instead of its front or rear,—and to prevent the springs bending or rubbing the edges of the boxes forming the rockers should be a somewhat greater distance apart than the sum of the two diameters of the two springs. The springs are arranged with their longitudinal axes vertical and their ends rigidly attached to the seat and base parts of the chair, so as to hold the rockers in their proper relative position; and by their resisting the rocking motion in one action or direction and assisting it in the other an easy, comfortable, and agreeable motion is produced, closely resembling that of an old-fashioned rocking chair, and wholly different from the abrupt jerk of a pivoted tilting chair, and the swaying motion produced in a seat oscillating on long plate springs. The two springs, arranged as described, constitute the connection between the seat and base parts of the chair for holding the rockers and their lower support in alignment and proper relative position."

The whole intent and purpose of this invention, as set forth in the specifications and drawings accompanying both the patent in suit and those of the original application, show that, though the chair tilted on rockers, these rockers were connected with the bottom of the chair and with the lower base in such a way that from the outside view, at least, the chair presented the appearance of an ordinary tilting chair turning on a pivot. And that was at that time evidently the purpose of the inventor, because he described the location of the two springs as being at "off-center points," and at opposite sides of the "chair center," describing the distance from

each other to be such as would necessarily locate them within the space usually allowed for springs in a rocking chair constructed on a pivotal principle.   This arrangement of the springs and of the rocker so located as to produce a comfortable movement backward and forward, and to prevent any lateral motion, obviated the noise and uncertain movements of the single spiral spring or of the other appliances that had been previously used.   I refer particularly to the use of rubber bands or ligaments, the long, slender, coil springs, and the flat, steel springs.   The patent office, after this long hearing upon the application for a divisional patent, allowed the claims and specifications as set forth in the patent in suit.   During such proceedings the inventors made several amendments to their specifications and claims.   In one of these earlier amendments the device was claimed to apply to "oscillating or tilting and revolving chairs."   In another amendment it was made to apply to an "oscillating chair," and in 1884 an amendment claimed it to apply to a "tilting or rocking chair."   In October, 1884, by the appeal then decided, the words used were "the combination in a tilting or rocking chair," and "no reference was afterwards cited "requiring any qualification or limitation in this respect."   In April, 1886, an amendment was finally made broadening the language, leaving out the descriptive words, and using the word "chair," claimed explicitly to be "generic and broad enough to cover either a tilting or rocking chair."   The object thus sought to be accomplished during all these proceedings was to apply this device to platform rocking chairs.   There can be no mistake as to the purpose of the inventors, or that their notification to the patent office in the several arguments and amendments submitted was sufficiently explicit to advise the examiner of the purpose they had in view.   For example, in the argument submitted October 1, 1885, the solicitor for the petitioner says:

"The present claims, as well as the claims of the original application, are understood and intended as covering this form of attachment when used in platform rocking chairs, strictly and technically, as well as when used in ordinary tilting chairs; and the claims of the main application were so used by the former examiner, as well as the examiners in chief."

The examiner thereupon insisted that the previous statements made by the applicant that the stops, the relation of the size of the springs to the size of the box, the spider, and the fact that the rocker boxes were made of metal, were omitted from the latest substitute specification, and suggested that these features should be included. In reply to this, however, the applicants expressly refused to do so, and said:

"The intentional and deliberate omission of these words from the claims will, of course, prevent any construction limiting the use of the invention to a chair having the rockers secured to the seat part by a spider. Instead of this, these claims are still intended and understood as covering a chair in which the rockers are secured in any ordinary way,—as, for instance, in platform rockers; and in substance the same is true in reference to the insertion relating to the width or distance apart of the rockers, this being merely intended to show that the rockers must be wider apart than the springs, so as to be on the outside thereof."

This was a distinct affirmation that the inventors did not intend to limit their device to a chair "having the rockers secured to the seat by a spider." This was an important declaration as to its scope, for it permitted a construction that the chair seat might be secured to the rockers otherwise than by a spider. This would enlarge the claim as to the points at which the springs might be attached to perform their function of holding the rocker and base to an alignment, and make it within a fair construction of the patent to use the springs by attachment directly to the rockers.

By these proceedings, extending over a period of several years, it is claimed that the inventors, with full notice to the patent office, gradually broadened their claim and their invention to cover the use of short, stiff spiral springs to the ordinary platform rocking chair. Had they a right to do this? Such right of inventors to broaden their claims by explicit statements as to scope and meaning while the patent is still undergoing examination in the patent office seems to be recognized by the supreme court in the case of Deering v. Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118. In Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, the same court recognized the right of the inventor to secure by reissue "his actual invention." The same right to secure such actual invention should be conceded to the applicant while the patent is still in the office undergoing examination, either by interference or otherwise. In the case of Beach v. Box-Machine Co., 63 Fed. 597, Judge Coxe says:

"There can be no dispute that an inventor is entitled so to amend his specification that it will employ perspicuous and artistic language, and enable him to hold all that he has invented."

In construing the effect of the proceedings in the patent office, full force should be given to the language of Justice Swayne, of the supreme court, in the case of Rubber Co. v. Goodyear, 9 Wall. 788, where he said:

"Liberality, rather than strictness, shall prevail where the fate of a patent is involved, and the question to be decided is whether the inventor shall hold or use the fruits of his genius and labors."

Again, in Westinghouse Air-Brake Co. v. New York Air-Brake Co., 11 C. C. A. 528, 63 Fed. 962, the circuit court of appeals for the Second circuit say:

"The patentee was a pioneer, in that he designed * * * a new way to accomplish a desired result, but upon the same general idea which he had unsuccessfully tried to work out in the earlier patent. His later patent was the bridge, and not a mere step."

I had occasion, in considering this same patent in the case of Rocker Spring Co. v. Flinn, 46 Fed. 109, to say that it involved a new and useful invention. A reference is made to that opinion for the grounds upon which that holding was made. Nothing has been offered in evidence in this case which leads me to change my opinion as to the validity of this patent as expressed in the Flinn Case. I do not find that the patent was anticipated by prior use or invention. The only question which follows, therefore, is whether the infringement has been established. If the complainant's inven-

tion could be limited to the use of the spiral springs within the iron frame described and specified in their original patent, and the tilting motion of the chair be limited to the use of the iron rockers constructed about the center or pivot of the tilting chair, so that the springs could be applied directly to the iron rocker and the iron base upon which it moves, then the defendant's chair would not be an infringement. But the inventors, in the proceedings in the patent office, distinctly stated that they did not limit the use of the springs to that location, or the rockers to the iron frame described in their original application. If, under the claims so broadened, the springs could be applied to any part of the chair where their function could be properly used, then the defendant's chair is a clear infringement. The springs on the defendant's chair are applied directly to the rocker and to the base. They there hold the chair in such a position as to keep the rocker and the base upon which it moves in direct alignment, and perform exactly the same functions that they did in the plaintiff's original application. The moment the patent office recognized the petitioner's claim to the right to apply these springs to platform rocking chairs, that moment the claim was broadened so as to notify all concerned that these springs might be used either by direct application to the rocker and the base, or in the contracted position under the center of the chair, where they were first used in the tilting or revolving chair. For these reasons, I think the use of the springs as applied on the defendant's chair is an infringement, and a decree may be prepared accordingly.